**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IMAD SAFA, et al. | : | CIVIL CASE |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| Defendants. | : | NO. 13-5007 |

**MEMORANDUM RE: MOTIONS TO DISMISS CIVIL RICO CLAIMS**

Baylson, J.                                                    February 11, 2014

**I.      Introduction**

     This civil rights lawsuit involves a number of causes of action sounding in federal and state law arising out of an arrest, forfeiture, and criminal proceedings against Plaintiffs. Presently, for case management reasons, the Court addresses the Motions to Dismiss filed by all Defendants only to the extent that they address Plaintiffs' civil RICO and conspiracy to commit civil RICO claims (collectively, the "RICO claims").  The Court will dismiss with prejudice Plaintiffs' RICO claims against the City of Philadelphia and will dismiss, without prejudice, Plaintiffs' RICO claims against all remaining Defendants.

**II.      Background**

     In their Complaint, Plaintiffs alleged that various jewelry wholesalers ("wholesalers") conspired with Philadelphia police officers – in particular, Defendant Frank Straup – to extort money and property from Plaintiffs to pay off an alleged debt owed by Plaintiffs' father. Plaintiffs allege the following Counts:  malicious prosecution under § 1983 (Count I), malicious prosecution under state law (Count II), unlawful arrest under § 1983 (Count III), false imprisonment and unlawful arrest under state law (Count IV), unjustified search and seizure under § 1983 (Count V), conspiracy under § 1983 (Count VI), conspiracy as to criminal charges under state law (Count VII), conspiracy as to civil cases (Count VIII), abuse of process (Count

IX), tortious interference with business relationships (Count X), tortious interference with

prospective business relations (Count XI), intentional infliction of emotional distress (Count

XII), a Monell claim under § 1983 (Count VIII), civil RICO (Count XIV), conspiracy to commit

civil RICO (Count XV), assault and battery (XVI), violation of the Fair Credit Extension

Uniformity Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law

(Count XVII), and conversion (Count XVIII).  On August 26, 2013, Defendants removed the

case to this Court.  ECF 1.

On September 3, 2013, Defendants United Express Jewelry, Gabriel Nisanov, and Israel

Nisanov (collectively, "the United Express Defendants") submitted a Motion to Dismiss Counts

Four, Ten, Eleven, Twelve, Fourteen, and Fifteen of Plaintiffs' Complaint.  ECF 2.  On

September 4, Defendants the City of Philadelphia, Police Commissioner Charles H. Ramsey, and

Detective Frank Straup submitted a Motion to Dismiss.  ECF 4.  On September 5, Defendants the

City of Philadelphia and Frank Straup submitted an Answer.  ECF 5.  On September 17, 2013,

Plaintiffs filed an Amended Complaint.  ECF 12.  Plaintiffs submitted another Amended

Complaint on September 18, 2013.[1]  ECF 14 [hereinafter "Am. Compl."].

On September 26, 2013, this Court dismissed the Motion to Dismiss filed on September

4, 2013 by the City of Philadelphia, Charles H. Ramsey, and Frank Straup, as moot.  ECF 16.

On October 10, 2013, the United Express Defendants filed another Motion to Dismiss.

ECF 20.  On October 11, 2013, Defendants Haviv Kasab and Yellow Gold, Inc. filed a Motion to

Dismiss.  ECF 21.  On the same day, Defendants Aslan Bawabeh, David Bawabeh, and Italy in

---

[1] The Amended Complaints, filed on September 17 and 18, did not name Police Commissioner
Ramsey as a Defendant.  Even though, under Rule 15, Plaintiffs are only entitled to amend their
complaint once without leave of court, the Court will allow the Amended Complaint of
September 18, 2013 (ECF 14), since Plaintiffs filed it one day after their First Amended
Complaint (ECF 12), and because the September 18 Complaint did not differ substantially from
the one filed the day before.

Gold Star, Inc. filed a Motion to Dismiss.  ECF 23.  Also on October 11, 2013, Defendants the

City of Philadelphia and Frank Straup (collectively, the "City Defendants") filed a Motion to

Dismiss.  ECF 24.

On October 25, 2013, Plaintiffs filed a Response in Opposition to the four Motions to

Dismiss.  ECF 25.

On November 5, 2013, the United Express Defendants filed a Reply to Plaintiffs'

Response in Opposition.  ECF 28.

## III.   The Parties' Contentions

### A.  The Complaint

The Complaint alleges that Plaintiffs' father, Jamal Safa, owned a jewelry store in the

Bronx called New Diamond City, which closed in 2010.  Am. Compl. ¶¶ 32-33.  Plaintiffs allege

that they worked in that shop on a part-time, seasonal basis.  Id. ¶ 36.  Plaintiffs assert that they

had no ownership interest in New Diamond City, nor did they sign contracts with any of the

jewelry wholesale defendants.  Id. ¶¶ 37-38.  As part of his business, according to Plaintiffs,

Jamal Safa obtained merchandise from the wholesalers on credit.  Id. ¶ 40.

In March 2011, Plaintiffs assert that they opened Exotic Diamond Jewelers of

Philadelphia ("Exotic Diamond"), a wholly independent business, started with new inventory.

Id. ¶¶ 35, 46.  Plaintiffs state that Jamal Safa had never had an ownership interest in Exotic

Diamond.  Id. ¶ 47.

Without alleging a specific time period, Plaintiffs allege that the wholesalers conspired to

use the criminal justice system to retrieve compensation for Jamal Safa's debts through his sons,

Plaintiffs.  Id. ¶ 48.  Plaintiffs assert that the jewelry wholesalers hired a private investigator

from the G.S. Consulting Group, Inc. – a firm headed by Defendant Gerald Schembri that

employed Defendant Hillel Jack Attali.  Id. ¶ 49.

3

Plaintiffs assert that the private investigator(s) led the wholesalers to Philadelphia, where they targeted Exotic Diamond.  Id. ¶ 50.  Then, according to Plaintiffs, the private investigators contacted Detective Frank Straup, and eventually, three of ten clients (Plaintiffs specifically name Gabriel Nisanov of United Express) met with Detective Straup.  Id. ¶¶ 51, 55.  Plaintiffs allege that Detective Straup and the private investigators conspired to force Plaintiffs to satisfy the purported, unsecured debts of their father by having Detective Straup seize Plaintiffs' merchandise and arrest Plaintiffs even though they knew that Plaintiffs had committed no crime. Id. ¶¶ 52-54.

According to Plaintiffs, Defendant Straup conducted a minimal investigation, that included only (1) interviewing Gabriel Nisanov, (2) reviewing a catalog of pieces that Gabriel Nisanov claimed were his designs, (3) looking at photos of the Exotic Diamond store windows, and (4) visiting Exotic Diamond and looking at the merchandise in the store window.  Id. ¶ 57. Plaintiffs allege that Detective Straup then obtained a search warrant based on this limited information, which lacked probable cause.  Id. ¶ 59.

Plaintiffs allege that Detective Straup, the private investigators, and eight wholesalers, entered Exotic Diamond on June 13, 2011.  Id. ¶ 62.  Plaintiffs allege that Detective Straup told them that they could do this "the easy way or the hard way," where the easy way involved paying half of the purported debt owed by Jamal Safa.  Id. ¶¶ 64-65.  Plaintiffs assert that they advised Detective Straup that they bore no responsibility for their father's supposed debt, at which time Detective Straup began seizing Plaintiffs' merchandise and permitting the eight wholesalers to enter the store and claim ownership over the merchandise.  Id. ¶¶ 67-74. Plaintiffs allege that the Philadelphia police officers then seized the remainder of Plaintiffs'

property.  The Complaint does not state whether Plaintiffs requested any internal investigation before filing their lawsuit.

Plaintiffs allege that, on or around July 13, 2011, Detective Straup and other officers arrested Plaintiffs and advised them that he would not have arrested them had they not complained about the unlawful seizure.  Id. ¶¶ 84-85.  Plaintiffs assert that there was no legal basis on which to arrest them.  Id. ¶¶ 87-88.

Plaintiffs assert that the District Attorney initiated charges against them on July 14, 2011.  Id. ¶¶ 90-92.  According to Plaintiffs, the District Attorney withdrew all charges against Plaintiffs and terminated the cases on January 26, 2012.  Id. ¶ 93.

Plaintiffs allege that the District Attorney brought criminal charges against them because of the conspiracy between the wholesaler defendants and Detective Straup; the improper investigation undertaken by Detective Straup; the City of Philadelphia's policy, practice or custom of neglecting to train police officers on proper investigations; the City of Philadelphia's deliberate indifference to the unconstitutional conduct of its police officers in failing to properly discipline, train, and supervise them in conducting investigations; and the City of Philadelphia's acquiescence to the policies, practices, or customs of the Philadelphia Police Department.  Id. ¶ 107.

Plaintiffs allege that, as a result of the criminal charges against them, they suffered substantial harm to their business, including the loss of their business reputation and the lost business of several customers and vendors.  Id. ¶¶ 111-12.  Moreover, Plaintiffs allege that certain vendors refuse to extend Plaintiffs credit or do business with them anymore.  Id. ¶ 113.  Finally, Plaintiffs allege that they sustained physical injuries as a result of the charges brought

against them, including depression, post-traumatic stress disorder, lost/increased weight, among others.  Id. ¶¶ 117-23.

Plaintiffs also assert that they then filed a petition to recover their merchandise.  Id. ¶ 94.
Plaintiffs allege that the wholesalers intervened in that action and requested that all merchandise be returned to the wholesalers instead.  Id. ¶¶ 95-98.  Plaintiffs assert that Judge Paula Patrick held forfeiture hearings on April 26 and April 30, 2013, and ultimately ordered the District Attorney to return all seized jewelry to Plaintiffs.  Id. ¶¶ 97-99.  Plaintiffs assert that Judge Patrick noted that the investigation by Detective Straup was "highly suspect," did not find the wholesalers' testimony to be credible, and credited the testimony of at least one of Plaintiffs.  Id. ¶¶ 100-03.  Plaintiffs allege that some, but not all, of their merchandise was returned to them, and that the value of the merchandise depreciated while in police custody.  Id. ¶¶ 104-06.

### 1.  The RICO Claims

Counts XIV and XV put forth a civil cause of action for (1) violation of RICO and (2) conspiring to violate RICO, respectively, against all Defendants.  Specifically, Plaintiffs allege that Defendants and others were associated in fact thus constituting an "enterprise" within the meaning of 18 U.S.C.A. §§ 1961(4) and 1962(c).  Id. ¶ 196.  Plaintiffs further allege that, at all times, the enterprise engaged in and affected interstate commerce and the facilities of interstate commerce, specifically through communication via phone lines, the U.S. mail service, and internet connections, in furtherance of the conspiracy.  Id. ¶ 197.

Plaintiffs assert that each Defendant conducted or participated in the conduct of the enterprise's affairs:  the wholesalers, by colluding with their private investigator to manufacture criminal allegations against the Safas and reporting those false allegations to the police, and the City Defendants, by arresting the Safas, seizing their merchandise, and initiating criminal proceedings against them, all without having conducted an adequate investigation.  Id. ¶ 199.

Plaintiffs assert that the enterprise began sometime before July 2011 and that Defendants continued to pursue the same behavior through the state court's ruling in Plaintiffs' favor in the forfeiture hearings in April 2013.  Id. ¶ 202.  However, the predicate acts upon which Plaintiffs base their RICO claim only involve conduct by Defendants connected to the investigation of Plaintiffs.  Plaintiffs do not specify the time period of the predicate acts, but the Court notes here that Plaintiffs assert that they opened Exotic Diamond in March 2011 and that their arrest took place on or around July 13, 2011.

As such, Plaintiffs allege that Defendants violated § 1962(c).

Plaintiffs further allege that each Defendant conspired and agreed among themselves to violate § 1962(d).

**B.  The City of Philadelphia's Motion to Dismiss RICO Claims**

Although not cited by the City of Philadelphia, the Third Circuit squarely held, in Genty v. Resolution Trust Corp., that a municipal Defendant may not be sued for RICO.  937 F.2d 899, 914 (3d Cir. 1991) ("We thus hold that a civil claim brought under section 1964(c) of the RICO Act, with its mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation.").  Thus, the RICO claims against the City of Philadelphia will be dismissed with prejudice.

**C.  The Remaining Defendants' Motion to Dismiss RICO Claims**

The Remaining Defendants assert that Plaintiffs have failed to plead with particularity, as required under Rule 9(b), the predicate acts sounding in fraud on which they appear to rely. These Defendants also contend that the Amended Complaint does not allege sufficient facts, as required by Twombly and Iqbal, with respect to other predicate acts and the RICO requirement of continuity.  Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

7

**IV.    RICO Statutory Language**

The RICO statute provides for a civil right of action through § 1964, which states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C.A. § 1964.

Plaintiffs allege that Defendants violated § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The statute defines "racketeering activity" by providing a lengthy list of predicate acts.

18 U.S.C.A. § 1961(1).  Plaintiff asserts that Defendants activities constitute "racketeering activity" by offering a non-exclusive list of Defendant's alleged predicate acts, including:   § 1341 (mail fraud), § 1343 (wire fraud), and § 1028 (fraud and related activity in connection with identification documents); § 1510 (obstruction of criminal investigations); § 1511 (obstruction of state or local law enforcement); § 1513 (retaliating against a witness, victim, or informant); § 1951 (interference with commerce, robbery, or extortion).   Am. Compl. ¶ 201.

The statute further provides that a "pattern of racketeering activity,"

> requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

18 U.S.C.A. § 1961(5).

8

Finally, § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C.A. § 1962(d).

## V.   Legal Standard

### A.  Motion to Dismiss Standard

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court will "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [Plaintiff]." Philips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  In Twombly, the Court announced that a complaint must plead facts sufficient "to raise a right to relief above the speculative level" to survive a motion to dismiss, which "requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action." Id. at 555.  The Court, in Twombly, further explained that a complaint must provide "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court clarified that the heightened degree of fact pleading explicated in Twombly extends to all civil actions. Id. at 1953.  After Iqbal, a district court deciding a Rule 12(b)(6) motion is required to conduct a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The court first "accept[s] all of the complaint's well-pleaded facts as true, but may disregard any legal

conclusions." Id. at 210-11 (citing Iqbal, 566 U.S. at 677).  Second, the court "determine[s]

whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'possible

claim for relief.'"  Id. at 211 (citing Iqbal, 566 U.S. at 678).

Under Rule 9(b) of the Federal Rules of Civil Procedure, the pleading requirements are

heightened.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally.").  "To satisfy the pleading

requirements of Rule 9(b), a complaint may either describe 'the circumstances of the alleged

fraud with precise allegations of date, time, or place' or may use 'some [other] means of

injecting precision and some measure of substantiation into … allegations of fraud.'"  In re

Processed Egg Prods. Antitrust Litig., No. 08-md-2002, 2012 WL 6645533, *3 (E.D. Pa. Dec.

20, 2012) (quoting Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d

164, 172 n.10 (3d Cir. 2002)).

**B.  Civil RICO**

Although RICO is a criminal statute, any person injured by a violation of § 1962 can

maintain a civil action and recover treble damages and attorney's fees.  See 18 U.S.C.A. §

1964(c).  For case management purposes, the Court will initially consider only the Plaintiffs'

RICO claims.

RICO prohibits certain racketeering activities established under 18 U.S.C. § 1962, and

the statute authorizes a civil action for "[a]ny person injured in his business or property by reason

of section 1962."  18 U.S.C.A. § 1964(c).  In order to properly plead a claim under § 1962(c), a

claimant must allege four elements:  (1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

10

### C.  Conspiracy to Commit Civil RICO

Plaintiffs also allege a conspiracy to commit a civil RICO violation under § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.  18 U.S.C. § 1962(d).  The Third Circuit has stated that, in order to plead a § 1962(d) violation, a plaintiff must "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose … includ[ing] agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity."  Glessner v. Kenny, 952 F.2d 702, 714 (3d Cir. 1991).  "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."  Lightning Lube v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993).

### V.  Conclusion

Upon review of the Amended Complaint and the Motion to Dismiss briefing, the Court agrees with the remaining Defendants that the Amended Complaint is defective as to allegations of predicate acts, including those involving fraud and the civil RICO requirements concerning duraction.  Although the Amended Complaint states detailed facts as to some Defendants, Plaintiffs do not adequately state sufficient facts as to the acts and omissions of all Defendants concerning the predicate acts required to be pled under RICO.  If Plaintiffs conclude certain Defendants should be dismissed, or the RICO allegations dropped, Plaintiffs should do so.  This Court will give Plaintiffs leave to file a Third Amended Complaint within 14 days.

If Plaintiffs intend to pursue their RICO claims as to the remaining Defendants, Plaintiffs need to thoroughly research and plead in accordance with Supreme Court and Third Circuit case law.

11

Assuming Plaintiffs file a Third Amended Complaint, and Defendants file Motions to Dismiss, their briefs need not repeat the briefs already on file.

For the foregoing reasons, this Court dismisses Plaintiffs' RICO claims as to the City of Philadelphia.  This Court further dismisses, without prejudice, Plaintiffs' RICO claims as to the remaining Defendants and grants Plaintiffs 14 days to file an amended complaint, either with or without RICO claims.  An appropriate order follows.

O:\Caitlin\Civil\13-5007 (Safa)\2014.2.10 MoL Granting City's MTD.docx