IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IMAD SAFA, et al., : | CIVIL CASE |
|     Plaintiffs, : | |
|                v. : | |
| : | |
| CITY OF PHILADELPHIA, et al., : | |
|     Defendants. : | NO. 13-5007 |

**MEMORANDUM RE: MOTIONS TO DISMISS**

**Baylson, J.**                                                                                                          **May 16, 2014**

## I.    Introduction

This civil rights lawsuit involves a number of causes of action sounding in federal and state law arising out of an arrest, forfeiture, and criminal proceedings against Plaintiffs. Previously, for case management reasons, the Court addressed the Motions to Dismiss filed by all Defendants only to the extent that they address Plaintiffs' civil RICO and conspiracy to commit civil RICO claims (collectively, the "RICO claims"). On February 11, 2014, the Court dismissed Plaintiffs' RICO claims against the City of Philadelphia and Plaintiffs' RICO claims against all remaining Defendants. ECF 30-31. A summary of the procedural history of this lawsuit and Plaintiffs' allegations can be found in the Memorandum of Law that accompanied this Court's February 11, 2014 Order.[1] ECF 30.

Following that Order, Plaintiffs filed a Second Amended Complaint on March 24, 2014. ECF 39. The Defendants then moved to dismiss many, but not all, of Plaintiffs' claims. ECF 42-45. Plaintiffs responded to those Motions on April 14, 2014. ECF 47.

---

[1] Although Plaintiffs have amended their Complaint, the allegations relevant to the Court's present discussion do not differ materially between the First Amended Complaint and the Second Amended Complaint. To the extent that this Memorandum refers to particular allegations, it will cite to the Second Amended Complaint.

For the following reasons, this Court dismisses Counts VIII, X, XI, XVI, and XVII.  This Court further dismisses Count XV, Plaintiffs' claim for conversion, against the Wholesaler Defendants and the City of Philadelphia.[2]  Count XV may proceed against Detective Straup.

## II.     Legal Standard

### A. Motion to Dismiss Standard

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court will "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [Plaintiff]." Philips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  In Twombly, the Court announced that a complaint must plead facts sufficient "to raise a right to relief above the speculative level" to survive a motion to dismiss, which "requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action." Id. at 555.  The Court, in Twombly, further explained that a complaint must provide "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court clarified that the heightened degree of fact pleading explicated in Twombly extends to all civil actions. Id. at

---

[2] Throughout this memorandum, I will refer to the jewelry wholesaler defendants – United Express Jewelry, Israel Nisanov, Gabriel Nisanov, Yellow Gold, Inc., Italy in Gold Star, Inc., Aslan Bawabeh, David Bawabeh, Gerald Schembri, G.S. Consultant Group, Inc., Hillel Jack Attali, and Haviv Kassab – as "Wholesaler Defendants."  I will refer to the City of Philadelphia and Detective Straup as the "City Defendants"

1953.  After Iqbal, a district court deciding a Rule 12(b)(6) motion is required to conduct a two-part analysis.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The court first "accept[s] all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Id. at 210-11 (citing Iqbal, 566 U.S. at 677).  Second, the court "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'possible claim for relief.'"  Id. at 211 (citing Iqbal, 566 U.S. at 678).

Under Rule 9(b) of the Federal Rules of Civil Procedure, the pleading requirements are heightened.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  "To satisfy the pleading requirements of Rule 9(b), a complaint may either describe 'the circumstances of the alleged fraud with precise allegations of date, time, or place' or may use 'some [other] means of injecting precision and some measure of substantiation into … allegations of fraud.'"  In re Processed Egg Prods. Antitrust Litig., No. 08-md-2002, 2012 WL 6645533, *3 (E.D. Pa. Dec. 20, 2012) (quoting Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002)).

**III.  Analysis**

    **A.  Count I (§ 1983 Malicious Prosecution), Count II (Malicious Prosecution), and Count VII (Conspiracy as to Criminal Charges)**

"Under Pennsylvania law, the elements of a malicious prosecution claim are that the defendant (1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff."  Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).

Defendants move to dismiss Plaintiffs' claims for malicious prosecution for two reasons. First, all Defendants argue that Plaintiffs' allegations fail to state a claim for malicious prosecution since the criminal proceedings were "nolle prossed" – a disposition that does not necessarily suggest that the proceedings terminated in Plaintiffs' favor.  ECF 43 at 2; ECF 44 at 5; ECF 45 at 7.  Defendants rely on Hilfirty v. Shipman, 91 F.3d 573, 579-80 (3d Cir. 1996) to support their argument.

However, Hilfirty merely stands for the proposition that some circumstances surrounding a grant of nolle prosequi may not satisfy the favorable termination requirement.  In Hilfirty, the Third Circuit considered whether a grant of nolle prosequi obtained pursuant to an agreement of compromise satisfies the requirement.[3]  Id. at 581-85.  In its analysis, the Third Circuit made clear that while some grants of nolle prosequi do not meet the requirement, others do.  Id. at 579 (noting that Pennsylvania case law "clearly indicates that a grant of nolle prosequi *can* be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably" (emphasis in original)); see also id. at 580 ("Both the Restatement and case law suggest that only terminations that indicate that the accused is innocent ought to be considered favorable."). Moreover, Hilfirty itself suggests that it should be read narrowly.  The opinion summarizes the majority's conclusion as follows:

> [A] grant of nolle prosequi is insufficient to support a claim of malicious prosecution only in circumstances where the accused herself enters into a compromise with the prosecution in which she surrenders something of value to obtain the dismissal or where the accused formally accepts the grant of nolle prosequi in exchange

---

[3] In Hilfirty, the grant of nolle prosequi had been obtained by plaintiff's co-defendant.  The district court found that the plaintiff was bound by her co-defendant's compromise, such that she was barred from pursuing a malicious prosecution claim.  The Third Circuit found that whether or not such a plaintiff would be bound depends on whether she consented to allow the co-defendant to enter the agreement on her behalf and whether she was fully aware that such consent would bar future malicious prosecution claims.

4

> for her knowing, voluntary release of any future claims for malicious prosecution. … In the absence of a release-dismissal agreement or a waiver reflected in a court record coupled with our earlier conclusion that the grant of nolle prosequi was not the result of a compromise between [a plaintiff] herself and the prosecution, we conclude that this case is governed by [Pennsylvania case law] and that the grant of nolle prosequi is "sufficient to satisfy the requisite element of prior favorable termination of the criminal action."

Id. at 573, 584-5 (internal citations omitted).  Plaintiffs have alleged that "the case terminated in the [Plaintiffs'] favor when … the District Attorney withdrew every single charge against them." ECF 39 (Second Amended Compl.) ¶ 95.  These allegations do not implicate the concerns of Hilfirty and instead fall under the purview of the general rule that a grant of nolle prosequi is sufficient to satisfy the favorable termination requirement.

Next, Wholesaler Defendants contend that the allegations are insufficient because Plaintiffs do not allege that the Wholesaler Defendants acted with malice.  Defendants are correct that "[i]n order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false." Logan v. Salem Baptist Church, 10-CV-0144, 2013 WL 4501209 (E.D. Pa. Aug. 23, 2013) (citing Hess v. Lancaster Cnty., 514 A.2d 681, 683 (Pa. Commw. Ct. 1986)).  Defendants contend that Plaintiffs have failed to allege that the Wholesaler Defendants knowingly provided false information to the police or otherwise procured the prosecution.  In fact, Plaintiffs do make such allegations, stating that Defendants "conspired to have the Plaintiffs' merchandise seized by [the police] under color of state law, although the defendants *knew no crime had been committed*." ECF 39 (Second Amended Compl.) ¶ 53 (emphasis added).

Plaintiffs' allegations sufficiently plead causes of action for malicious prosecution against Defendants. In light of this finding that Plaintiffs' sufficiently alleged a claim for the underlying cause of action, Plaintiffs may also proceed on their claim for conspiracy related to their malicious prosecution claims.

### B. Count IX (Abuse of Process)

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." Matter of Larsen, 616 A.2d 529, 592-93 (Pa. 1992) (citing PROSSER AND KEETON ON TORTS, § 131 at 897 (5th ed. 1984)).

In order to state a claim for abuse of process, the plaintiff must allege that the defendant: (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designated, and (3) harm has been caused to the plaintiff. Douris v. Schweiker, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002), aff'd sub nom. Douris v. Rendell, 100 F. App'x 126 (3d Cir. 2004) "There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." Cameron v. Graphic Mgmt. Assocs., Inc., 817 F. Supp. 19, 21 (E.D. Pa. 1992) (Cahn, J.). Rather, "the gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect, in other words, a perversion of it." Douris, 229 F. Supp. 2d at 404 (citing McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987)).

As the Supreme Court of Pennsylvania explained:

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself such as the surrender of property or the payment of money by

6

>	the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the assurance of the process itself, which constitutes the tort.

Id.  The Supreme Court of Pennsylvania has interpreted the tort broadly, making clear that it "will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 305 (3d Cir. 2003) (citing McGee, 535 A.2d at 1026).  "As a result, a court must look at the legal process used and decide whether it was used primarily 'to benefit someone in achieving a purpose which is not the authorized goal of the procedure in question,' not whether it was used to achieve a purpose or advantage unrelated or 'collateral' to the entire underlying litigation proceeding." Gen. Refractories Co., 337 F.3d at 305 (quoting Werner v. Plater–Zyberk, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)) (emphasis omitted).

Here, taking all inferences in favor of the Plaintiffs, they have clearly alleged the required element that Defendants initiated both criminal and civil proceedings against Plaintiffs primarily and improperly for the purpose of securing the debts of Plaintiffs' father.  Whether there was some other, legitimate motive is a disputed issue of material fact, to be resolved at later stages of this litigation.  Given that we can only dismiss a claim if no set of facts consistent with the allegations would give rise to relief, Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001), it is not appropriate to dismiss the abuse of process claim at the 12(b)(6) stage.

### C. Count VIII (Conspiracy as to Civil Cases), Count XVI (Malicious Prosecution and Abuse of Process Against Defendant Yellow Gold), and Count XVII (Malicious Prosecution and Abuse of Process Against Defendant Italy in Gold Star)

Plaintiffs style Counts XVI and XVII as claims for "malicious prosecution and abuse of process."  However, in light of Plaintiffs' Count II, for malicious prosecution with respect to the criminal proceedings, and Count IX, for abuse of process, each of which Plaintiffs alleged

7

against both Yellow Gold and Italy in Gold Star, the Court will treat them as claims for the state cause of action known as wrongful use of civil proceedings.

In Pennsylvania, wrongful use of civil proceedings is governed by the Dragonetti Act, which is set forth in 42 Pa. C.S.A. § 8351(a) (the "Dragonetti Act").[4] The Dragonetti Act provides:

> A person who takes part in the procurement, initiation, or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. C.S.A. § 8351(a). Thus, Plaintiffs must show "that [they] prevailed in the underlying action, that [Defendants] acted in a grossly negligent manner *or* without probable cause in pursuing the underlying action, *and* that they had an improper purpose in doing so." Schmidt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005), aff'd, 217 F. App'x 153 (3d Cir. 2007) (emphasis in original).

An individual has "probable cause" to prosecute an action if he or she "believes in the existence of the facts upon which the claim is based" and "[r]easonably believes that under those facts the claim may be valid under the existing or developing law." Id. (quoting 42 Pa. C.S.A. § 8532). Pennsylvania courts have defined gross negligence as "a lack of slight diligence or care,

---

[4] As discussed supra, a distinction has been drawn between malicious prosecution and abuse of process in the criminal context. Nevertheless, "[w]hatever may have been the importance of that distinction before the Dragonetti Act was adopted, it appears that both torts are subsumed within the general scope of the Act, which includes persons who take part in the procurement, initiation or continuation of civil proceedings for wrongful purposes." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002).

or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages," "the want of even scant care" and "the failure to exercise even that care which a careless person would use." Hart v. O'Malley, 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001) (citing Black's Law Dictionary 1057 (7th ed. 1999)).

Plaintiffs' allegations do not sufficiently state a claim for wrongful use of civil proceedings. Although Plaintiffs allege that Wholesaler Defendants "knew no crime had been committed" when they provided information to the police, ECF 39 (Seconded Am. Compl.) ¶ 53, there are no allegations that any of the Wholesaler Defendants knew or should have known that they did not have a legitimate claim to Plaintiffs' merchandise. Such a shortcoming is fatal to the claims and requires dismissal of them.

Having decided to dismiss Counts XVI and XVII, claims for wrongful use of civil proceedings, we must also dismiss Count VIII, the claim for conspiracy to commit wrongful use of civil proceedings.

**D. Count X (Tortious Interference with Business Relations) and Count XI (Tortious Interference with Prospective Business Relations)**

Plaintiffs allege that they lost the business of several customers because Plaintiffs were unable to fulfill their contracts because of the seizure of the merchandise. ECF 39 (Second Am. Compl.) ¶¶ 118, 172. Plaintiffs further allege that certain vendors will no longer extend Plaintiffs credit or do business with them. Id. ¶ 119. Defendants move to dismiss these claims, arguing that the statute of limitations bars the claims and that Plaintiffs do not identify lost business relations or prospective business relations with sufficient specificity.

With respect to claims for tortious interference with business relations or prospective business relations, Pennsylvania has explicitly adopted § 766 of the Restatement (Second) of

9

Torts. See Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 659 (3d Cir. 1993) (citing Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1181 (Pa. 1978)). Section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979). As the Third Circuit has noted, "Section 766 'states the rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff.'" Windsor Sec., Inc., 986 F.2d at 660 (quoting Restatement (Second) of Torts § 766A cmt. a). Thus, this section has no applicability to Plaintiffs' allegations, which involve Defendants frustration of Plaintiffs ability to meet their contractual obligations. Section 766A of the Restatement, by contrast, states the rule where an actor intentionally interferes with a Plaintiff's "performance of his own contract, either by preventing that performance or making it more expensive or burdensome." Id. (quoting Restatement (Second) of Torts § 766A cmt. a). As the Third Circuit summarized:

> [T]he sections focus on different targets of interfering conduct. Section 766 addresses disruptions caused by an act directed not at the plaintiff, but at a third person: the defendant causes the promisor to breach its contract with the plaintiff. Section 766A addresses disruptions caused by an act directed at the plaintiff: the defendant prevents or impedes the plaintiff's own performance.

Id. In another case, the Third Circuit observed: "[n]ot only are the targets of the two sections different, but section 766A is much more difficult to apply and conducive to disputes." Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66 (3d Cir. 1994).

In Gemini, the Third Circuit agreed with the Supreme Court of Wisconsin's reasoning in refusing to adopt § 766A because "causing a performance of a contract to be more costly 'as an element of proof is too speculative and subject to abuse to provide a meaningful basis for a cause of action.'" Id. at 66 (quoting Price v. Sorrell, 784 P.2d 614 (Wyo. 1989)).  The Third Circuit held that it was "not persuaded that the Pennsylvania Supreme court would adopt section 766A, and [saw] no error in the district court's dismissal of [the] section 766A claim." Id.

Because Pennsylvania has not recognized a cause of action against a defendant that has prevented or impeded a plaintiffs' own performance, Plaintiffs' Count X and XI must be dismissed.

### E.  Count XII (Intentional Infliction of Emotional Distress)

The Pennsylvania Supreme Court has not clearly recognized a cause of action for intentional infliction of emotional distress, but has "cited the section [46 of the Restatement of Torts] as setting forth the minimum elements necessary to sustain such a cause of action." Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000).

In order to state a claim for intentional infliction of emotional distress, the plaintiff must establish four elements:  (1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe.  See Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979).  For a plaintiff to recover for intentional infliction of emotional distress, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).  As one Pennsylvania court explained, "[g]enerally, the case is one in which the recitation of the facts to an average member

11

of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1183-84 (Pa. Super. Ct. 1989)

Defendants move to dismiss Plaintiffs' cause of action for intentional infliction of emotional distress, contending that Defendants' conduct did not rise to the level of extremity and outrageousness required. "It is the court's responsibility to determine if the conduct alleged in a cause of action reaches the requisite level of outrageousness." Andrews v. City of Philadelphia, 895 F.2d 1469, 1486-87 (3d Cir. 1990).

Whether this conduct rises to the level of extremity and outrageousness required under the law is a question of material fact. Given that we can only dismiss a claim if no set of facts consistent with the allegations would give rise to relief, Doe, 257 F.3d at 313, it is not appropriate to dismiss the intentional infliction of emotional distress claim at the 12(b)(6) stage. Walker v. N. Wales Borough, 395 F. Supp. 2d 219, 232 (E.D. Pa. 2005).

**F.  Count XV (Conversion)**

Finally, Defendants move to dismiss Plaintiffs' cause of action for conversion as untimely, based on the two-year statute of limitations, because Plaintiffs allegations show that the seizure of merchandise took place outside the statutory period, on June 13, 2011. Wholesaler Defendants also move to dismiss because they argue that Plaintiffs' allegations show that Wholesaler Defendants never exercised possession or dominion over the merchandise, as required by law. Plaintiffs contend that they did not learn of the loss of some of their merchandise until the Commonwealth returned some, but not all, of it to Plaintiffs, which did not happen until May 2013. Plaintiffs also argue that they allege that certain Wholesaler Defendants grabbed some of the merchandise. ECF 47 (Pls.' Mem. in Supp. of Opp'n to Mot. to Dismiss) at 17 (citing ECF 39 (Second Am. Compl.) ¶ 72).

Under Pennsylvania law, "[a]n action for taking, detaining or injuring personal property, including actions for specific recovery thereof" must be commenced within two years. 42 Pa. C.S.A. § 5524(3). Generally, the statute of limitations begins to run when the cause of action accrues. See Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000).

As to Wholesaler Defendants, Plaintiffs allege that they wrongfully took merchandise on June 13, 2011, at the time of the seizure. ECF 39 (Second Am. Compl.) ¶ 72 (alleging that "the jewelry wholesale defendants start[ed] grabbing stuff, and it got a little chaotic") (alteration in original) (internal quotation marks omitted). Plaintiffs further allege that Detective Straup "threw two jewelers out of the store, after they claimed ownership to items for which [Plaintiffs] showed proof of purchase." Id. ¶ 76. Any conversion on the part of Wholesaler Defendants must have taken place at that time, since Wholesaler Defendants did not have access to Plaintiffs' merchandise thereafter. Moreover, Plaintiffs allegations demonstrate that Plaintiffs were present at the time of this alleged conversion, objected to it, and thus were knowledgeable about facts sufficient to institute a claim for conversion. Thus, the statute of limitations bars Plaintiffs' conversion claim against Wholesaler Defendants, and it must be dismissed.

As to Defendant the City of Philadelphia, the conversion claim must also be dismissed pursuant to 42 Pa. C.S.A. § 8541 (the "Political Subdivision Tort Claims Act" or the "PSTCA"), which provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Although the following section provides limited exceptions to the general grant of governmental immunity, the exceptions are limited to injury "caused by the negligent acts of the local agency or an employee thereof." 42 Pa. C.S.A. § 8542. Given that conversion is an intentional tort, the exceptions from immunity do not apply. See Min v. Morris, 737 F. Supp. 2d

13

332, 340 (E.D. Pa. 2010) (Restrepo, J.) (finding conversion claim does not fall within § 8542 exceptions). The claim is thus barred.

Neither the statute of limitations nor the PSTCA bars Plaintiffs' conversion claim against Detective Straup. Generally, the PSTCA grants official immunity to employees of a local agency acting within the scope of his office or duties.[5] 42 Pa. C.S.A. § 8545. However, it provides an exception to immunity where "it is judicially determined that the act of the employee caused the injury and that such act constituted … willful misconduct." Id. § 8550. Here, Plaintiffs allege a conversion, an intentional tort, based on the conduct of Detective Straup, an employee of the police department. Thus, the PSTCA does not protect Detective Straup from the allegations here at the pleadings stage of the litigation.

Nor is Plaintiffs' conversion claim against Detective Straup barred by the statute of limitations. Plaintiffs allege that the police did not return all of the seized merchandise to them in May 2013. Plaintiffs could not have known of any missing items until the return of that property. The statute of limitations does not bar Plaintiffs' conversion claim against the City Defendants related to any missing merchandise that had been seized but was not returned by the police.

Thus, Plaintiffs' conversion claim against Wholesaler Defendants and the City of Philadelphia must be dismissed. However, Plaintiff may proceed with a conversion claim against Detective Straup.

---

[5] The section provides: "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa. C.S.A. § 8545.

## IV. Conclusion

For those reasons, Counts VIII, X, XI, XVI, and XVII are dismissed. Count XV, as alleged against the Wholesaler Defendants and the City of Philadelphia, is also dismissed, but may proceed against Detective Straup.

O:\Caitlin\Civil\13-5007 (Safa)\2014.5.16 MoL on Remaining MTDs.docx